UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED
MAR 19 2015

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| RALPH LEE, | CIV 14-4117 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART THIRD-PARTY DEFENDANTS' MOTION TO DISMISS |
| MARK SCHULTZ, | |
| Defendant and Third-Party Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA and UNITED STATES FISH AND WILDLIFE SERVICE, | |
| Third-Party Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Third-Party Defendants (United States) moves this Court, pursuant to Fed. R. Civ. P. 12(b), to dismiss Third-Party Plaintiff's (Schultz's) claim for indemnity and contribution under the Federal Tort Claims Act (FTCA) and the Administrative Procedure Act (APA). Based on the following, the motion relative to the FTCA is denied, while the motion relative to the APA is granted.

## BACKGROUND

The material facts of the case are not in dispute. Plaintiff Ralph Lee (Lee) and Schultz own adjoining properties in Moody County, South Dakota. Surface water flows in its natural and ordinary course over Lee's land, the dominant property. While the surface water would typically drain into a drainage ditch, referred to as the "exit ditch," located on Schultz's property, Lee claims that Schultz has failed to properly clear the exit ditch, which has resulted in obstruction due to overgrowth. As a result, water has pooled upon ten acres of Lee's property.

Schultz maintains that his land, namely the exit ditch, is burdened by a conservation or wetland easement owned by the United States Fish and Wildlife Service (the Service). In 2009,

1

an attorney for both Schultz and Lee sent a letter to the Service requesting permission to clear the exit ditch of the obstructing overgrowth. A Deputy Project Leader for the Service responded with his own letter indicating that were the parties to clear the exit ditch as proposed, criminal charges could be forthcoming pursuant to the National Wildlife Refuge Administration Act. Nothing in the record indicates that any formal steps were taken by either Lee or Schultz to resolve the matter.

Three years after the Service's Project Leader responded to Lee and Schultz's informal request, Lee filed a complaint against Schultz in Moody County, South Dakota for negligence, nuisance, and declaratory and injunctive relief as to the parties' drainage rights. In his answer to the Complaint, Schultz asserted that he was legally incapable of complying with Lee's request and, therefore, Lee's prayer for relief should be barred. Schultz then brought a timely third-party claim against the United States for indemnification and contribution in the event that Schultz is found liable to Lee for money damages.

The action is now in this Court pursuant to the United States' notice of removal due to Schultz's claims for money damages against the United States, implicating the FTCA. The United States is asking this Court to dismiss Schultz's Third-Party Complaint in its entirety for lack of subject matter jurisdiction based upon (1) Schultz's failure to formally file and exhaust an administrative claim or appeal with the Service as mandated by the FTCA; (2) Schultz fails to state a relevant source of subject matter jurisdiction for claims that are controlled by the APA; and (3) Schultz fails to state a source of subject matter jurisdiction for claims not controlled by either the FTCA or the APA.

## DISCUSSION
### The Federal Tort Claims Act

Under the FTCA, a claimant is proscribed from bringing an action for money damages against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . ." 28 U.S.C. § 2675(a).[1] Thus, in order for this Court to have subject matter jurisdiction over

---

[1] § 2675(a) reads in full:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or

2

the case, the provisions of the FTCA, or some other statute bestowing subject matter jurisdiction, must be complied with. "Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and statutes enacted by Congress pursuant thereto." *Crow Creek Sioux Tribe v. Bureau of Indian Affairs*, 463 F. Supp. 2d 964. 966 (C. D. S.D. 2006). "'The party claiming federal subject matter jurisdiction has the burden of proving it exists.'" *M.J. Farms, Ltd. V. U.S. Fish and Wildlife Service*, 593 F. Supp. 2d 907, 910 (W.D. La. 2008) (quoting *People's Nat'l Bank v. Office of Comptroller of Currency*, 362 F.3d 333, 336 (5th Cir. 2004)).

In order for a Federal court to have subject matter jurisdiction of a claim arising under the FTCA, the claimant must first present the matter to the appropriate administrative agency (i.e., the United States Fish and Wildlife Service) and allow it to be decided with finality by that agency. Stated differently, a claimant may not pursue a tort claim against the United States in District Court until "'(i) the agency finally denies the administrative claim, or (ii) six months pass without a final denial of the administrative claim - whichever comes first.'" *Kodar v. United States*, 879 F. Supp. 2d 218, 225 (D. R.I. 2012).

"The Supreme Court . . . recognized that 'the most natural reading of § 2675(a) indicates that Congress intended to require *complete* exhaustion of Executive remedies *before invocation of the judicial process*.'" *Mader v. U.S.*, 654 F.3d 794, 807 (8th Cir. 2011) (quoting *McNeil v. United States*, 506 U.S. 106, 112 (1980))(emphasis in original). "[A] claim that fails to satisfy § 2675(a)'s requirements remains inchoate, unperfected, and not judicially actionable." *Id.* The exhaustion doctrine, as it is known, is rooted "in the principles of federalism and comity." *Crow Creek Indian Tribe*, 463 F. Supp. 2d at 969. Exhausting agency processes both protects the specific agency's authority and promotes judicial efficiency. *Id.* An agency's authority is promoted by avoiding premature judicial interruption and allowing a record to be developed through the agency's special expertise. *See id.* Moreover, by allowing the agency to develop the

---

omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

The exceptions to the presentment requirement will be addressed later in this memorandum opinion.

record and undertake its own factfinding, judicial efficiency is accelerated because judicial repetition, or supplantation, of agency factfinding can be halted. *See id.*

In the case at bar, when the dispute revolving around the exit ditch first arose, the interests of Lee and Schultz's aligned, as evidenced by the pair retaining the same counsel to send a letter to the Service requesting permission to clear the exit ditch. The Service responded to the parties' letter October 2009, which denied Lee and Schultz's request and detailed the maximum charges that could be imposed on the parties were they to clear the ditch as proposed.[2] After receiving the Service's letter, neither party took any further action. It wasn't until Lee sued Schultz three years later that Schultz is seeking relief, albeit in this Court and not the Service.

"The doctrine of exhaustion of administrative remedies typically is applied to ensure that senior officials in a government agency have authoritatively ruled, in accordance with available procedures, on an issue that a party attempts to bring to court based on a preliminary decision of a subordinate official." *Miller v. Air Line Pilots Ass'n*, 108 F.3d 1415, 1418 (D.C. Cir. 1997). *See* 33 Charles Alan Wright & Charles H. Koch, Jr., FEDERAL PRACTICE AND PROCEDURE § 8398 (1st ed. 2014). Indeed, the Service has in place a mechanism to ensure that a senior official is provided an opportunity to review tort claims. *See* Declaration of Sharon Brenna in Support of Motion to Dismiss Third-Party Complaint, ¶ 2 [hereinafter Brenna Declaration]. Were Lee and Schultz's claim filed with the Service's adjudicatory body, the Service would have been afforded meaningful opportunity to factfind and apply its expertise, which are two of the driving principles behind the exhaustion doctrine. While Lee and Schultz informed the Service of the dispute, it is not clear if the informal letter sent on their behalf proceeded up the "chain of command" as an administrative claim with the Service's adjudicatory body would.

Schultz attempts to cast the informal letter from the Service in the light of finality, arguing that the letter represented a final oration of the parties' respective rights and there existed no further administrative procedure to exhaust. In doing so, he cites to *M.J. Farms, Ltd. v. U.S.*

---

[2] The final paragraph of the Service's letter reads as follows:
> Wetland Easement 42x is a valid, enforceable federal real property interest that your clients are intending to impact. The wetland along the watercourse which your clients intend to maintain will be adversely affected by the project in clear violation of Wetland Easement 42x's terms and federal law. According to your letter, Mark Schultz had identified himself as a party to this drainage project. Mr. Schultz has full knowledge that these basins are protected by a FWS easement. Should the project proceed with his involvement, it is likely Mr. Schultz could be held in violation of the National Wildlife Refuge Administration Act (16 USC 668dd) which carries a maximum penalty of $100,000 fine and 1 year imprisonment.

U.S. Department of the Interior Fish & Wildlife Service Letter, October 28, 2009, ¶ 6.

*Fish and Wildlife Service*, 593 F. Supp. 2d 907 (W.D. La. 2008). In issue in *M.J. Farms* was a federal law that "strictly prohibit[ed] the hunting of migratory waterfowl on land that is determined to be baited . . ." *M.J. Farms* at 909. In 2008, Hurricane Gustav hit the United States in Terrebonne Parish, Louisiana, traveling further northward. Gustav damaged significant portions of crops in Louisiana, rendering those crops unharvestable. In particular was a 23,000 acre area of farmland in Louisiana, known as the Louisiana Delta Plantation (the Delta). As part of the Delta farmer's farming leases was a condition that required at least annual "discing" of soil in preparation for the next year's planting season.[3] Due to the large number of unharvestable plants still remaining in the soil, the discing caused a large amount of seed, beans, and grain to be distributed over the ground. Based on the excess plant material, the Delta was determined by the Fish and Wildlife Service to be baited within the meaning of federal law. As such, the Service advised Delta personnel and hunters that the land was off-limits to hunting waterfowl. As a result, hunting leases on the Delta were cancelled and the Delta saw losses of hundreds of thousands of dollars. Plaintiffs, a hunter and a commercial farming operation, sued the Service in federal court for, *inter alia*, declaratory judgment and injunctive relief. The Service moved to dismiss the claim for want of subject matter jurisdiction.

While the court in *M.J. Farms* ultimately ruled in favor of the Service[4], Schultz cites to the case for its proposition of finality. The *M.J. Farms* court heard evidence showing a final agency decision by the Service had indeed been made. Both sides produced testimony that agents from the service went to the Delta and determined that the land was in fact baited due to the shredding of the farmland. The court further noted that there existed no "'administrative recourse'" after the Plaintiffs tried and failed to have the agents return to the land for a reevaluation after the agency's decision. As a result, the court found the decision of the Service to be final.

In the instant case, however, it cannot be said that the letter from the Service was a final decision leaving no administrative recourse. Indeed, there exists an administrative procedure in place for alleged tort claims that neither Lee nor Schultz utilized. Contrarily, no available administrative recourse is precisely why the *M.J. Farms* court found the Service's decision to be

---

[3] Discing is the process by which the plants currently growing in soil are shredded in order to prepare the soil for new plants.
[4] The United States District Court for the Western District of Louisiana, Alexandria Division ultimately ruled that the final decision of the Service as to the application of federal law to the facts presented was "[not] unreasonably interpreted nor unreasonably applied in this case by agents . . ." *Id.* at 915.

5

final. Moreover, unlike in *M.J. Farms*, Schultz has presented no evidence that agents of the Service evaluated the property in question in an effort to review Schultz's claim. Thus, there is no evidence, other than the informal letter, that a superior agent of the Service had been notified of the claim prior to this suit. Accordingly, nothing in this record suggests that the Service undertook any factfinding in order to develop the factual backdrop of the case. Certainly, the impact of Hurricane Gustav on 23,000 acres of land would cause the Service to apply its environmental expertise in order to develop a reasoned decision without being notified of the impact by landowners/lessees. Indeed, the path and destruction of hurricanes are observed each year by those upon whom the hurricane has no impact. The same cannot be said for the exit ditch in the case at bar affecting the rights of two individuals. There exists no evidence of administrative acknowledgment or factfinding outside the existence of the letter from a Project Leader of the Service. Thus, the Service's administrative procedure was not exhausted within the meaning of the FTCA. This Court's analysis cannot stop there, however, as there is another means through which the FTCA can confer subject matter jurisdiction upon federal courts.

Notwithstanding the above exhaustion doctrine analysis, there exists an exception to the requirement of exhaustion within § 2675(a) on which Schultz relies. The exception excludes from the purview of exhaustion any "third-party complaint, cross-claim, or counterclaim." Relevant to the facts of this case is Rule 14 of the Federal Rules of Civil Procedure pertaining to third-party practice. As to a third-party complaint, "the exception only applies to third-party actions under Fed.R.Civ.P. 14 *seeking indemnity or contribution from the government*; it does not apply to independent actions seeking indemnity or contribution, nor to third-party claims which are not 'true' Rule 14 impleader actions." *Kodar*, 879 F. Supp. 2d at 226 (emphasis added).

Based on the above third-party practice exception, Schultz argues that his claim against the United States is properly in federal court. Procedurally, Schultz asserts, his third-party complaint against the United States is precisely what is contemplated by Rule 14. This Court agrees. Schultz's action against the United States is a true third-party complaint within the meaning of § 2675(a).

"Rule 14(a) should be liberally construed to accomplish its purpose but it is not a catchall for independent litigation." *U.S. Fidelity & Guaranty Co v. Perkins*, 388 F.2d 771, 773 (10th Cir. 1968). The Rule should not be interpreted "in such way as to permit a practice which transcends

6

the limits of federal jurisdiction. *Baltimore & O.R. Co. v. Saunders*, 159 F.2d 481, 484 (4th Cir. 1947). To not allow Schultz to proceed as requested, however, would ultimately undermine the purposes of the FTCA's exhaustion exception and Rule 14. As has been discussed, when this dispute first arose in 2009, Lee and Schultz's interests aligned. After receipt of the Service's letter in October 2009, the parties took no further action until Lee filed a complaint against Schultz in South Dakota state court. Evidently, and nothing in the record suggests otherwise, the same facts giving rise to Lee's suit spurred the letter addressed to the Service in 2009. Even assuming, however, as the United States does, that Schultz's action can be likened to a direct action, it cannot be said that Schultz voluntarily became a party to this action. In fact, Schultz is defending against this action and has impleaded the United States as a direct result of Lee's complaint. Thus, the United States would not be defending this action itself but for Lee's complaint against Schultz. There are no independent bases upon which Schultz is relying. This Court feels, then, that Schultz's claim is a "true" Rule 14 impleader action.

   Procedurally, the facts confronting this Court are distinguishable from cases cited by the United States, *see Rosario v. American Export-Isbrandtsen Lines*, 531 F.2d 1227 (3d Cir. 1976) (holding that the *original plaintiff* to an action should be required to exhaust administrative procedure before bringing a direct action against the third-party defendant, the United States); *West v. United States*, 592 F.2d 487 (8th Cir. 1979) (same); *Kodar, LLC v. United States.*, 879 F. Supp. 2d 218 (D. R.I. 2012) (holding an original defendant's cross-claim against the United States, as co-Defendant, was in the nature of a direct complaint and administrative proceedings had to first be exhausted), and this Court finds the government's analysis inapposite.

   In *Kodar*, for example, Plaintiff Richard J. Darche (Darche) was operating a Beechcraft Bonanza. On the day in which the relevant events occurred, Darche was preparing the Bonanza for take-off. During that time, a Piper Comanche, being operated by Stuart Gitlow (Gitlow), was preparing for landing. Darche claimed that he was given clearance to depart but was not warned by air traffic control that the Comanche was preparing to land. According to Darche, as his aircraft "was in the process of its takeoff roll" it was struck by the Comanche. *Kodar,* 879 F. Supp. 2d at 220. In June of 2010, the owner of the Bonanza, KODAR, LLC. (KODAR), and its insurer, Phoenix Aviation Managers (Phoenix), filed an administrative claim with the Federal Aviation Administration (the FAA).

Subsequently, in March 2011, KODAR, Darche, and Phoenix (the Plaintiffs) filed a complaint against Gitlow and, by way of the FAA, the United States. In May 2011, the FAA asserted, as an affirmative defense, lack of subject matter jurisdiction under the FTCA. Gitlow, in September 2011, filed an answer to the complaint and a cross-claim against the FAA for indemnity and contribution. Gitlow's answer was amended in October 2011 to include claims that he, *inter alia*, suffered bodily injury. The cross-claim against the FAA was also amended to include claims for money losses and bodily injury.[5] The FAA answered by denying the amended cross-claim's allegations and asserting that Gitlow did not comply with § 2675(a) and § 2401(b) of the FTCA. In April 2012, the FAA moved to dismiss Gitlow's claim for damages related to the monetary losses and bodily injury.

The court ultimately found that Gitlow's cross-claim, as to the personal injury and money losses, was barred. The court reasoned that Gitlow had failed to timely file an administrative complaint with the FAA. Notwithstanding the FTCA's exclusion of cross-claims from the exhaustion requirement, "that provision does not waive the FTCA's two-year statute of limitations." *Id.* at 223. The court also reasoned that Gitlow's personal injury claim could not be categorized as compulsory since the FAA was not a plaintiff and did not hail Gitlow into the Plaintiff's action. Nevertheless, as mentioned, the personal injury claim was barred by the FTCA's timing strictures. Ultimately, the *Kodar* court found that Gitlow's claim was more akin to a direct claim rather than a cross-claim and he failed to comply with the provisions of the FTCA:

> The requirement to exhaust administrative procedures before filing a claim in this Court is intended to give fair notice to the government and to afford the government the opportunity to investigate the claim and to consider the possibility of dealing with it administratively . . . Gitlow was well aware that he could have filed an administrative claim against the FAA after the 2008 collision, but he chose not to do so. Instead, Gitlow's claims of personal injuries and property damage were not asserted against the FAA until after Gitlow had become a defendant in this litigation and Gitlow's insurer asserted claims against Darche and the FAA.

*Id.* at 228.

As to the instant case, Schultz's claim for indemnity and contribution is not relative to claims for personal injury and directly relates to Lee's complaint. As Schultz points out in his

---

[5] While various other cross-claims and counterclaims arose among the parties (both original parties and implead parties), this discussion will focus on Gitlow's amended cross-claim against the FAA.

brief, "Schultz [is] the original defending party and has now served a summons and complaint on a nonparty – the United States Fish and Wildlife Service – which may be liable to Schultz for Lee's claim." Surreply of Third-Party Plaintiff at 3, Ralph Lee v. Mark Schultz v. United States of America and United States Fish and Wildlife Service, No. Civ. 14-4117 (D.S.D. Dec. 30, 2014). Thus, the rationale of *Kodar* has no application. While the request made by Lee and Schultz was denied by the Service, this Court is not willing to infer, as the United States does, that Schultz *knew* he would eventually be sued by Lee thereby rendering Schultz's claim against the United States a direct action. Schultz is claiming only that, due to the Service's easement, he is proscribed from complying with any court order directing that the exit ditch be cleared and that any money damages granted to Lee should be carried by the Service. No direct claims by Schultz against the United States exist. What is being prayed for by Schultz is indemnification and contribution from the United States should he be found liable to Lee. Such a claim falls squarely within the FCTA's exception to exhaustion and Rule 14.[6] *See Kodar*, 879 F. Supp. 2d at 226.

While Schultz received the Service's letter in 2009, he apparently agreed with the Service's stance and saw no need to file an administrative claim. Unlike Gitlow, then, Schultz did not have a claim personal to himself that he failed to timely bring directly. Thus, this Court finds that Schultz's third-party complaint falls within the purview of Rule 14 and the FTCA exhaustion exception.[7] As the court stated in *Hassan v. Louisiana Dept. of Transp. & Development*, 923 F. Supp. 890, 894 (W.D. La. 1996),

> we note that were the exhaustion requirement of § 2675(a) applied in the present case, the plaintiff would effectively be allowed to avoid joining an indispensable party as defined by Fed.R.Civ.P.Rule 19(a) leaving the defendants, if they are cast in judgment, with no recourse against that party except to bring a separate administrative claim and eventual judicial action for indemnification or contribution. This situation would result in a significant waste of judicial resources and create a substantial risk that complete relief would not be accorded to all parties.

---

[6] In fact, in *Kodar*, the FAA did not challenge Gitlow's contribution and indemnity claim, only Gitlow's claim for damages relative to his personal injury and money losses resulting from the crash. *See Kodar*, 879 F. Supp. 2d at 231 n. 4.

[7] It is worth noting that § 2401(b) of the FTCA requires that *final* decisions of an agency be challenged in court within six months of receiving written notice of that decision. It could be argued, then, that Schultz, as Gitlow, failed to comply with the timing strictures of the FTCA and his action, therefore, should be time-barred. This Court, however, does not accept that the Service's letter was a final decision, which will be discussed more in depth in the following section, and, thus, Schultz is barred by neither § 2675(a) (i.e., exhaustion) nor § 2401(b) (i.e., statute of limitations).

9

## The Administrative Procedure Act

Next Schultz's claim for declaratory relief under the APA will be considered.[8] "The federal APA does not confer jurisdiction." Wright, *supra*, at § 8295. *See Califano v. Sanders*, 430 U.S. 99, 105, 107 (1977). Even actions brought under the APA must be based on independent grounds of federal jurisdiction. *Id.* Such independent grounds may be in the form of a federal court's general jurisdiction under 28 U.S.C. § 1331. *Id. See Robbins v. Reagan*, 780 F.2d 37, 42 (D.C. Cir. 1985). Even when a litigant points to independent jurisdictional bases (i.e., § 1331), however, the APA requires that the challenged administrative decision be final.[9] *Id.* at § 8397. *See Bennett v. Spear*, 520 U.S. 154, 176 (1997).

In determining finality of agency decisions for the purposes of judicial review, the Supreme Court has developed a two-prong test: "(1) the action must mark the consummation of the agency's decision-making process – it must not be of a merely tentative or interlocutory nature and (2) the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178-179 (1997).

As to the first prong, as discussed, it is unclear how involved the Service had become in response to Lee and Schultz's letter. What is clear, however, is that a formal claim regarding the property dispute was never filed with the Service. Brenna Declaration, *supra*, at ¶ 3. In fact, the only evidence pertaining to the Service's involvement with the matter is in the form of the Brenna Declaration and the 2009 response letter from the Service. Moreover, there is at least one factual allegation that the Service's letter contests,[10] which may have been subject to resolution had the matter been submitted to the Service's adjudicatory body. The letter should not be interpreted as "the consummation of the agency's decision making process" as there is no evidence that the Service's decision making process was properly involved.

---

[8] Independently, the APA does not require that a claimant comply with the exhaustion doctrine as the FTCA does. Instead, exhaustion is required under the APA only when necessitated by an applicable statute or agency regulation. *See Conservation Force v. Salazar*, 919 F. Supp. 2d 85, 89 (D.C. Cir. 2013). Because Schultz is claiming subject matter jurisdiction under § 1331, exhaustion will not be discussed in this section as § 1331 does not require it. Instead, discussion will be confined to the APA requirement that administrative action be final before judicial review may be sought.

[9] What constitutes a "final agency action" is not clearly defined in either statutory code or judicial opinion. Judicial Review § 8295. When interpreting finality for purposes of judicial review, courts should inquire into whether the agency action "implies a definitive act of the agency, action which is binding until and unless it is set aside by a court. It assures that courts will review a closed, discrete, and focused action." *Id.*

[10] In the Service's letter, the Service refuses to concede the fact that the exit ditch existed prior to the servient property becoming burdened by the Service's easement. U.S. Department of the Interior Fish & Wildlife Service Letter, October 28, 2009, ¶ 3.

The 2009 letter was drafted by a Deputy Project Leader of the Service. Nothing in the record suggests that the letter's author was involved in the Service's adjudicatory body. Indeed, the Service never appeared to receive an administrative claim. Brenna Declaration, *supra*, at ¶ 3. "A subordinate officer's actions become reviewable as final only when they carry a direct and immediate consequence." *Motions Systems Corp. v. Bush*, 437 F.3d 1356, 1362 (Fed. Cir. 2006). While the letter does state that criminal penalties are available to the Service should Schultz clear the exit ditch, the letter in no way states their immediate imposition. Instead, the letter states that should Schultz proceed as requested he could be in violation of the National Wildlife Refuge Administration Act. Asserting that someone *could* be held liable for a particular act in no way imposes a direct and immediate consequence.

As to the second prong of the *Bennett* test, Schultz argues that the Service's letter marks the determination of Schultz's rights and obligations (do not alter the exit ditch) and that legal consequences will flow from the letter (face criminal penalties). To bolster his contention, Schultz cites to *W. Ill. Home Health Care, Inc. v. Herman*, 150 F.3d 659 (7th Cir. 1998). In *Herman*, Plaintiffs, the Byers, owned and operated two health-care related companies. Because the Byers owned both companies, an employee of one company often also worked for the other. The overlap of employment gave rise to a Department of Labor (DOL) investigation. The DOL determined that employees working hours at both companies must have those hours combined and be paid the applicable overtime. The DOL addressed a letter to the Byers to that effect, which indicated that the DOL would "be closing [the] investigation with no further action." *Herman* at 661. The letter also specified an intended follow-up investigation in order to ensure that the DOL demands were being complied with. Finally, the DOL letter noted possible civil penalties for repeated violations, however, no penalty was currently being assessed against the Byers.

The Seventh Circuit Court of Appeals found the letter to be a final, reviewable oration of administrative activity and, therefore, the Byers had proven subject matter jurisdiction under the APA. In coming to its conclusion, the Seventh Circuit reasoned the "letter is not at all tentative or interlocutory in nature. [The DOL] uses a simple, declarative sentence: 'At a minimum, a joint employment relationship exists in this case . . .' There is nothing hypothetical or tentative about this letter." *Id.* at 663. Thereafter, the court ruled that the subordinate position of the letter's author was not dispositive and found in favor of the Byers.

While *Herman* carries with it the same hallmarks as the instant case, this Court must side with the United States District Court for the District of Columbia, which was confronted with the same issue the *Herman* court faced and this Court currently faces. In *Rhea Lana, Inc. v. U.S. Department of Labor* (*Rhea*), No. 1:14-CIV-00017, 2014 WL 6534902 (D.C. Cir. Nov. 21, 2014), __ F. Supp. 3d __, Rhea Lana, Inc. and Rhea Lana's Franchise Systems (the Company), the Plaintiff in the action, was a for-profit business that organized consignment sales of children's toys and clothing. The Company leased its space and consignors supplied the merchandise. As part of its mission plan, the Company relied on its consignors to "volunteer" at events wherein the consignors would greet attendees, display items for sale, etc. Volunteering at these events was not strictly required of the Company's consignors, however, those who did received early access to sales events insofar as they could place their items in the most favorable locations. Subsequently, the DOL initiated an investigation into the Company's practices and determined that it must pay the "volunteers" back-wages for their services and that, moving forward, the "volunteers" should be paid as regular employees. The Company agreed to pay back-wages to a specified 39 consignors who were classified as managers, but disagreed with the necessity to pay the remaining consignors. Thereafter, the DOL sent a letter to the Company, which highlighted possible civil penalties for not complying with all of the DOL's directives and that repeated violations could result in $1,100 fines for each violation. The letter, like in *Herman*, stated that no penalty was currently being assessed. The Company sued the DOL, asserting that the letter constituted "final agency action subject to judicial review under Section 704 of the APA." *Rhea* at *2. The DOL filed a motion to dismiss for lack of subject matter jurisdiction.

In ruling in favor of the DOL, the D.C. District Court reasoned "an agency determination is not reviewable if it 'only affects a party's rights adversely on the contingency of future administrative action.'" *Id.* at *3 (quoting *DRG Funding Corp. v. Secretary of Housing and Urban Development*, 76 F.3d 1212, 1214 (D.C. Cir. 1996)). "'Practical consequences, such as the threat of a party having to defend itself in an administrative hearing should the agency actually decide to pursue enforcement, are insufficient to bring an agency's conduct under judicial purview.'" *Id.* (quoting *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005)). The *Rhea* court went on to note that the letter in question did not "affirmatively compel Rhea Lana to do anything." *Id.* at *4. Additionally, the court observed that while the letter exposed the Company to penalties insofar as its noncompliance, "the exposure [was]

entirely contingent on the agency actually bringing and proving its case in such a proceeding." *Id.* The letter independently carried with it no legal efficacy. *Id.*

Thus, the *Herman* and *Rhea* courts grappled with seemingly analogous circumstances yet came to opposite conclusions.[11] This Court finds the *Rhea* conclusion more persuasive. Like in *Rhea*, the Service's letter here does not affirmatively compel Schultz to do anything. Rather, the letter encourages Schultz, albeit aggressively, to continue doing what he has done: nothing. Any criminal penalties enunciated in the letter are contingent on future events and the Service bringing charges. Hanging subject matter jurisdiction on the possibility of future events is not something this Court is willing to do. Based on the foregoing, Schultz's claim under the APA is dismissed as no final agency action has been presented to this Court sufficient to bestow subject matter jurisdiction. Accordingly,

**IT IS ORDERED:**

1. Third-Party Defendant's motion to dismiss Third-Party Plaintiff's claim for money damages under the Federal Tort Claims Act is denied.

2. Third-Party Defendant's motion to dismiss Third-Party Plaintiff's claims for declaratory and injunctive relief under the Administrative Procedure Act is granted.

3. The Court retains jurisdiction under the state law claims.

Dated this 19th day of March, 2015.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
By: _____
Deputy

---

[11] The *Rhea* court noted the *Herman* court's holding in footnote 5 and seemingly disregarded the opposite conclusions the courts came to as irrelevant. It should be noted, however, that an appeal was filed with the D.C. Circuit Court of Appeals on January 21, 2015. *See Rhea Lana, Inc., et al v. DOL*, 15-5014.

13